UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

G BARRETT LLC, f/k/a Barrett and Gilbert
LLC, GREGORY BARRETT, individually,
DANIEL GILBERT, individually ,

    Plaintiffs,

-vs-                                        Case No. 5:09-cv-374-Oc-10TBS

THE GINN COMPANY, GINN-LA PINE
ISLAND LTD, LLLP, GINN REAL ESTATE
COMPANY, LLC, CAMERON, DAVIS &
GONZALEZ, PA, SUNTRUST
MORTGAGE, INC.,

    Defendants.
_____

## MEMORANDUM OPINION AND ORDER
## GRANTING SUMMARY JUDGMENT

The Plaintiffs have filed a six-count Amended Complaint against the Defendants alleging violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§501.201, *et. seq* ("FDUTPA"), and fraud under Florida common law, relating to the Plaintiffs' purchase of a plot of land located in Monteverde, Florida (Doc. 107). Defendants The Ginn Company, Ginn-LA Pine Island Ltd, LLLP, Ginn Real Estate Company, LLC (collectively "The Ginn Defendants"), and SunTrust Mortgage, Inc. ("SunTrust"), each moved to dismiss all claims against them (Docs. 115-116), and the Plaintiffs filed responses in opposition (Docs. 127-128).

As part of their motions, The Ginn Defendants and SunTrust submitted and cited to a copy of the Contract for Lot Purchase entered into between the Plaintiffs and The Ginn Defendants (Doc. 115, Ex. B). To consider the contract, the Court converted the Defendants' motions to dismiss into motions for summary judgment, see Fed. R. Civ. P. 12(d), and afforded each side additional time to file supplemental briefing and/or supporting evidence (Doc. 136).

The Plaintiffs and SunTrust filed supplemental briefs and exhibits (Docs. 137, 142), and Defendant Cameron, Davis & Gonzalez, P.A. was dismissed with prejudice pursuant to a stipulation of the parties (Doc. 133). The Plaintiffs also settled all claims with The Ginn Defendants (Doc. 138), and filed a notice of voluntary dismissal as to them (Doc. 143). Judgments have been entered (Docs. 135, 148), so that SunTrust is the only Defendant remaining. The only dispositive motion left to resolve is that of SunTrust.

The Court finds that the undisputed material facts establish, as a matter of law, that SunTrust is entitled to summary judgment on all claims asserted against it.[1]

**Undisputed Material Facts**

The Plaintiffs are all citizens and residents of Illinois. Ginn Development Company (d/b/a The Ginn Company), is a corporation organized under the laws of Georgia, and the parent corporation of Ginn-LA Pine Island Ltd., LLLP, and Ginn Real Estate Company.

---

[1] On November 3, 2011, the Court entered an Order finding that summary judgment was due to be granted in favor of Suntrust, and that a separate order explaining the basis for this decision would be filed in due course (Doc. 147).

The Ginn Defendants are all authorized to do business in Florida. SunTrust is a banking institution incorporated in Georgia and transacting business in various states, including Florida. Cameron is a Florida law firm.

At some point before June 13, 2005, the Plaintiffs were solicited by the Ginn Defendants to purchase property in Monteverde, Lake County, Florida, in a residential real estate development known as "Bella Collina." Bella Collina is a golf community created, marketed, and sold by the Ginn Defendants.

On or about June 13, 2005, the Plaintiffs entered into a Contract for Lot Purchase with the Ginn Defendants to purchase Lot 74, recorded in the Lake County public records as "The Plat of Bella Collina West, Plat Book 54, Pages 1-19." (Doc. 115, Ex. B, ¶ 1). The contract price for the Lot was $ 739,900.00 (Id., ¶ 3), and the purchase was financed by a Conventional Loan Financing Agreement mortgage between the Plaintiffs and SunTrust in the amount of $ 587,920.00. (Doc. 142, Ex. B, p. 3). The sale was completed long-distance, with Cameron acting as the agent for both the Plaintiffs and the Ginn Defendants during the closing process. Prior to the sale, SunTrust had the property appraised at $ 745,000.00, and the Plaintiffs contend that SunTrust was one of the Ginn Defendants' "preferred lenders."

The Contract for Lot Purchase between the Plaintiffs and the Ginn Defendants contains several disclaimers. First, the Contract provides that the Plaintiffs are responsible for obtaining financing to purchase Lot 74, that the Ginn Defendants have no responsibility for obtaining any financing, and that the Ginn Defendants "[have] not represented or

warranted that any such financing is or will be available to [the Plaintiffs]." (Doc. 115, Ex. B, ¶ 4). Next, the Contract contains a general disclaimer stating:

> Buyer understands and acknowledges that the salespersons representing Seller in connection with this transaction do not have the authority to make any statements, promises or representations in conflict with or in addition to the information contained in this Contract and the Community Documents, and Seller and Buyer hereby specifically disclaim any responsibility for any such statements, promises or representations. By execution of this Contract, Buyer acknowledges that Buyer has not relied upon any such statements, promises or representations, if any, and waives any rights or claims arising from any such statements, promises or representations.

(Id., Ex. B, ¶ 14(c)).

Lastly, the Contract contains a merger and integration clause, which states that the Contract and its attached Addenda A-E "constitutes the entire agreement between the Seller and Buyer with respect to the Lot and the Development. This Contract may only be amended in writing executed by both Buyer and Seller." (Id., ¶ 31).

> ANY CURRENT OR PRIOR UNDERSTANDINGS, STATEMENTS, REPRESENTATIONS, UNDERTAKINGS, INCENTIVES OR AGREEMENTS, ORAL OR WRITTEN, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, RENDERINGS OR REPRESENTATIONS CONTAINED IN BROCHURES, ADVERTISING, PROMOTIONAL OR SALES MATERIALS AND ANY ORAL OR WRITTEN STATEMENTS OF SALES REPRESENTATIVES, IF NOT SPECIFICALLY EXPRESSED IN THIS CONTRACT OR IN THE COMMUNITY DOCUMENTS, ARE VOID AND HAVE NO FORCE OR EFFECT AND BUYER ACKNOWLEDGES AND AGREES THAT BUYER HAS NOT RELIED ON ANY SUCH ITEMS. BUYER HEREBY WAIVES ANY AND ALL CLAIMS AGAINST SELLER AND BROKER WITH RESPECT TO SUCH ITEMS.

(Id.).

The Uniform Residential Loan Application between the Plaintiffs and SunTrust also contains disclaimer language that "neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property." (Doc. 142, Ex. A, p. 3). And the Conventional Loan Financing Agreement provides a similar disclaimer that "SunTrust makes no representation or warranties, express or implied, regarding the property, the condition of the property, or the value of the property." (Doc. 142, Ex. B, p. 4).[2]

At some point after the sale, the Lake County Property Assessor's Office established the value of Lot 74 at "a drastically lower price." (Doc. 1, ¶ 20). Based on this reduced assessed value, the Plaintiffs filed suit in the United States District Court, Northern District of Illinois, Western Division, on November 4, 2008 (Doc. 1), seeking to recoup their losses incurred in connection with the difference in the purchase price and the actual value of the property. The case was transferred to this Court on August 25, 2009 (Docs. 58-60). An amended complaint was filed, with leave of Court, on July 29, 2010 (Doc. 107).

The Amended Complaint asserts two claims against SunTrust: a claim for violations of the FDUTPA (Count IV), and a common law claim for fraud (Count V). Both claims are premised on the Plaintiffs' contentions that SunTrust actively participated in the allegedly

---

[2] SunTrust submitted these two documents as exhibits to its supplemental briefing at the time the Court converted its motion to dismiss into a motion for summary judgment. (Doc. 142, Exs. A-B). SunTrust also cited to the loan documents in its original motion to dismiss (Doc. 115, p. 14).

5

fraudulent scheme to artificially inflate the price of the Monteverde property, thereby inducing the Plaintiffs to purchase the property at the higher price. The Plaintiffs seek monetary damages (including deposits and payments the Plaintiffs paid for the property, closing costs, fees, and the difference between the true value of the property and the purchase price), attorney's fees and costs. See Fla. Stat. § 501.211(2). They do not seek rescission of the purchase contract or the mortgage.

## **Standard of Review**

Summary judgment is appropriate only when the court is satisfied that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Issues of facts are "genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id. The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552 (1986); Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325, 106 S.Ct. at 2554.

The burden then switches to the non-moving party, who cannot rely solely on the pleadings of the case, but must support his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003).

## **Discussion**

In both claims against SunTrust, the Plaintiffs allege that SunTrust conspired with the other Defendants to falsely misrepresent the value of the Monteverde property, thereby inducing the Plaintiffs to purchase the property at the artificially inflated price. In particular, the Plaintiffs allege, among other things, that SunTrust: (1) hired the appraisers who appraised Lot 74; (2) included inappropriate items in the appraisals; (3) used fraudulently overvalued comparables for the appraisal process; (4) misrepresented to the Plaintiffs the true loan-to-value ratio (the ratio of the value of the home to the amount of the mortgage); (5) reviewed and knowingly approved the fraudulent appraisal; and (6) accepted kickbacks from the Ginn Defendants. See Doc. 107, ¶¶ 85-111, 127, 129, 134, 136; Doc. 128, pp.

8-9, 12-13. The Plaintiffs contend that these actions violate both the FDUTPA and establish a *prima facie* case of fraudulent inducement.

SunTrust argues that the express terms of the Contract for Lot Purchase Agreement and the mortgage documents directly contradict the alleged misrepresentations, and therefore, the Plaintiffs' claims must fail because they cannot justifiably rely on the misrepresentations.

The FDUTPA provides for a civil cause of action for "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). "A consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." City First Mortg. Corp. v. Barton, 988 So. 2d 82, 86 (Fla. 4th DCA 2008) (quoting Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). See also Bookworld Trade, Inc. v. Daughters of St. Paul, Inc., 532 F. Supp. 2d 1350, 1364 (M.D. Fla. 2007).

Under Florida law, there are four elements for a claim of fraudulent misrepresentation/inducement: "(1) a false statement concerning a material fact; (2) the representer's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." Johnson v. Davis, 480 So. 2d 625 (Fla. 1985). See also

Butler v. Yusem, 44 So. 3d 102, 105 (Fla. 2010). Following the Restatement of Torts,[3] the Florida Supreme Court has held that "[j]ustifiable reliance is not a necessary element of fraudulent misrepresentation." Butler, 44 So. 3d at 105. See also Besett v. Basnett, 389 So. 2d 995, 997-98 ("a recipient may rely on the truth of a representation, even though its falsity could have been ascertained had he made an investigation, unless he knows the representation to be false or its falsity is obvious to him.").

Despite the Florida Supreme Court's pronouncements, the law concerning the elements of a claim for fraudulent inducement and/or misrepresentation in Florida remains somewhat murky as an expansive body of case law has developed in both the state and federal courts inserting the element of justifiable reliance into the tort of fraudulent inducement and fraudulent misrepresentation. See e.g., Gemini Investors III, L.P. v. Nunez, ___ So. 3d ___, 2011 WL 4578015 at *2 (Fla. 3rd DCA Oct. 5, 2011); Shakespeare Foundation, Inc. v. Jackson, 61 So. 3d 1194, 1200 n. 1 (Fla. 1st DCA 2011); Rose v. ADT Sec. Servs., Inc., 989 So. 2d 1244, 1247 (Fla. 1st DCA 2008); Joseph v. Liberty Nat. Bank, 873 So. 2d 384, 388 (Fla. 5th DCA 2004); Equity Lifestyle Properties, Inc. v. Florida Mowing And Landscape Service, Inc., 556 F.3d 1232, 1240 n. 13 (11th Cir. 2009); Grills v. Phillip Morris USA, Inc., 645 F. Supp. 2d 1107, 1123 (M.D. Fla. 2009); Bookworld, 532 F. Supp. 2d at 1365. But see Thompkins v. Lil' Joe Records, Inc., 476 F.3d 1294 (11th Cir. 2007) (omitting element of justifiable reliance in claim for fraudulent inducement). Indeed,

---

[3]See Restatement (Second) of Torts (1976) §§ 540, 541.

several of the decisions cited by SunTrust seemingly follow this decisional authority by referring to justifiable reliance in a fraudulent inducement claim, but hold that any reliance is negated as a matter of law by the contract between the parties. See Garcia v. Santa Maria Resort, Inc., 528 F. Supp. 2d 1283, 1295-96 (S.D. Fla. 2007) ("[R]eliance on fraudulent representations is unreasonable as a matter of law where the alleged misrepresentations contradict the express terms of the ensuing written agreement.") (quoting Eclipse Medical, Inc. v. American Hydro-Surgical Instruments, Inc., 262 F. Supp. 2d 1334, 1342 (S. D. Fla. 1999)). See also Rosa v. Amoco Oil Co., 262 F. Supp. 2d 1364, 1367-69 (S.D. Fla. 2003).

Despite this apparent state of confusion in Florida law with respect to the element of reliance, the Court finds, based on the undisputed material facts of this case, that summary judgment is warranted in SunTrust's favor.

The terms of the Contract for Lot Purchase Agreement expressly state that the Plaintiffs did not rely on any prior agreements, promises, or representations when entering into the sales agreement. (Doc. 115, Ex. B, ¶ 14.c.). Such language would clearly nullify any prior representations concerning the value of the property (such as the allegedly fraudulent appraisal), thereby precluding any reliance (justifiable or otherwise) on such statements. See Garcia, 528 F. Supp. 2d at 1295-95 (dismissing with prejudice fraud, negligent misrepresentation, and FDUTPA claims where land purchase contracts expressly stated "that Purchaser has not relied upon any prior agreements made by anyone other

than Developer, or oral statements (including oral statements of sales representatives), except as specifically stated in this Contract.").

The Plaintiffs argue that SunTrust cannot interpose the Contract for Lot Purchase Agreement because SunTrust is not a party to the agreement – rather it is signed and executed only between the Plaintiffs and the Ginn Defendants. However, the Plaintiffs have asserted in essence a fraudulent conspiracy claim. The Amended Complaint is replete with assertions that SunTrust acted in concert with the Ginn Defendants to defraud the Plaintiffs. Thus, if the language of the Contract for Lot Purchase Agreement would bar any fraud claims against the Ginn Defendants due to a lack of reliance, it would also bar the same claims against SunTrust for the same reason.

Moreover, even if the terms of the Contract for Lot Purchase Agreement could not offer protection to SunTrust, summary judgment is warranted in its favor based on the express terms of the mortgage documents alone. The Uniform Residential Loan Application and Conventional Loan Financing Agreement both clearly and unequivocally state that "SunTrust has made no "representations or warranties, express or implied, regarding the property, the condition of the property, or the value of the property." (Doc. 142, Ex. B, p. 4; see also Ex. A, p. 3). These terms – which expressly provide that the Plaintiffs cannot rely on any statements from SunTrust concerning the value of the Monteverde property – directly repudiate any prior statements SunTrust may have made (directly or through its appraiser) concerning the value of Lot 74. See Linville v. Ginn Real Estate Co., LLC, 697 F. Supp. 2d 1302, 1307-09 (M.D. Fla. 2010) (dismissing with

prejudice fraudulent inducement claim against lender where alleged oral misrepresentations contradicted the express terms of the loan documents).

Stated differently, the fact that the contracts explicitly provide that the Plaintiffs cannot rely on any statements by SunTrust concerning the value of Lot 74, precludes the Plaintiffs from recovering damages for relying on those same statements – they cannot rely on something that they were expressly told not to accept (and which they agreed not to rely upon when they signed the loan application and agreement). See Mac-Gray Services, Inc. v. DeGeorge, 913 So. 2d 630, 634 (Fla. 4th DCA 2005) ("A party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract."); Hillcrest Pacific Corp. v. Yamamura, 727 So. 2d 1053, 1056 (Fla. 4th DCA 1999) (stating same). See also Adrianne Roggenbuck Trust v. Development Resources Group, LLC, No. 6:09-cv-2158-Orl-31KRS, 2010 WL 3824215 at * 3 (M.D. Fla. Sept. 27, 2010) (dismissing with prejudice fraudulent inducement claim where sales contracts included provisions prohibiting reliance on oral or outside representations). This same rule of law applies to bar the Plaintiffs' FDUTPA claim. See Zlotnick v. Premier Sales Group, Inc., 431 F. Supp. 2d 1290, 1295 (S.D. Fla. 2006) (finding that the plaintiff failed to state a claim under FDUTPA where the plaintiff signed a contract whose terms expressly contradicted any misrepresentations on which he relied);Rosa, 262 F. Supp. 2d at 1368-69 (dismissing FDUTPA claims where plaintiff relied upon oral statements that were at variance with written contracts). While a plaintiff may not need to prove in an intentional misrepresentation case that he justifiably relied upon the misrepresentations, he

nevertheless must be held responsible for understanding the terms of a contract that he freely and voluntarily enters into, and which expressly belies the alleged false statements.

The Plaintiffs further argue that notwithstanding the disclaimers in the various contract and loan documents, summary judgment is not warranted when a contract is entered into through fraudulent inducement, because the entire contract is unenforceable. See D & M Jupiter, Inc. v. Friedopfer, 853 So. 2d 485, 489 (Fla. 4th DCA 2003). However, in this case, the Plaintiffs are not seeking to void the purchase contract or mortgage by suing for rescission; they are instead suing for damages, which affirms the contract and its terms. See Mac-Gray Services, 913 So. 2d at 634. See also Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co., 761 So. 2d 306, 313 (Fla. 2000) (holding that fraudulent inducement claim for damages affirms contract and thus ratifies its provisions); Adrianne Roggenbuck Trust, 2010 WL 3824215 at * 3 (same). The Plaintiffs are thus bound by the terms of the contract and loan.

Because the terms of the Loan Application and Agreement directly and expressly contradict any alleged statements SunTrust and/or its appraiser made concerning the value of the Monteverde property at the time the Plaintiffs purchased the property, the Court finds, as a matter of law, that the Plaintiffs could not rely on any such statements. As such, the Plaintiffs have failed to establish a *prima facie* case under either the FDUTPA or the tort of fraudulent inducement, and have also failed to create any genuine issues of disputed material fact.

Accordingly, upon due consideration, SunTrust's converted motion for summary judgment (Doc. 115) is GRANTED, and the Clerk is directed to enter judgment in favor of Defendant SunTrust Mortgage Inc., and against the Plaintiffs as to all claims asserted against SunTrust in the Amended Complaint (Doc. 107, Counts IV and V). Because all claims have now been fully and finally resolved in this case, the Clerk is further directed to terminate all pending motions and to close the file.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 23rd day of December, 2011.

*[signature]*

UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record